Chief Justice Robertson
delivered the Opinion of the Court.
Spencer, a man of color, claiming to be free in consequence of a deed of emancipation, acknowledged in Yirginia, in 1790, by John Baker, the then ownej of his mother, Judy, and liberating her and other slaves—sued Hudgens, in chancery, for his claim. the purpose of establishing
The deed- , , , , , . , , •auiy acknowledged and recorded—-is in the following words:—“Know all men by these presents, “ that I, John Baker of Chesterfield countjr, do believe “ that all men by nature are equally free; and, from a clear conviction of the injustice and criminality of depri- „ ,. J r i ■ “ vmg my fellow-creatures oí their natural right, do here- “ by emancipate or set 'free the following men, women, and
“ children, viz:—
“ Bob and Daniel, December 25th, 1790
“ Grace and Amy, December 25th, 1790
“ Barbara, -r-x i tnnn December 25th, 1790 1790
“ Tom, to go out December, 1793
“ Sally, to go out October, 1796
“ Betty apd Pat, to go out December,. 1802
“ Oliver, •to go out November, 1805
i1 Judy, to go out September, 1806
“ Hannah, to go out January, 1807
In general, a deed of emancipation in the present tense—“I hereby emancipate,” &c. gives immediate f dom-. But terms ^yfngethatd the emancipation is a° futurePtim&wkey; as “A hereby emancípate on the 25th of Decent thennt^t;”0“¿¡d tion of slavery the^designated period. The ingranToHn^deedt and of the testaSways'1 To'11’ ba sought for, and feet'6 lnt& 6
*590 “Nann, to go out February, 1808
“ Peter, to go out December, 1809
“Amy, to go out March, 1811
“Ido hereby relinquish all right, title and claim to “ the said people after they severally arrive to the dates “ above mentioned, and not before. In witness where- “ of, I have hereunto set my hand and seal, this the ninth “day of June, 1790. John Baker” [l. s.]
“Teste—John Kobbler, | “ Martin Baker, jr.” j
Spencer was born between the date of the acknowledgment of the deed, and September, 1806, when Judy, his mother, was Ho go out.” How Hudgens obtained the possession of him, has not been shown; but he insists that Spencer is a slave, because, as he argues, his mother was a slave at the time of his birth. And, on the other hand, the counsel for Spencer, contends that, his mother was free from the date of the acknowledgment of the deed of emancipation; and was, at the time of his birth, only in a state of pupilage and servitude; and that she being thus free, at his birth, he is, of course, a freeman a nativitate.
The Circuit Court decreed, that Spencer was free; but refused to allow any compensation for his services, or to decree to him the sum for which, under the order of the Court, he had been hired during the pendency of this suit. Hudgens, complaining of the principal decree, has appealed; and Spencer, feeling aggrieved by the refusal to decree to him any compensation for his services pr any portion of the amount for which he was hired, prosecutes a writ of error.
The main question depends altogether on the deed itself—especially as no extraneous fact, which might aid us in the interpretation of the deed, has been exhibited.
And w'e freely confess that the language of the deed is not such as to enable us, without any doubt or hesitancy, to decide as to its true legal import and effect.
The literal import of the deed, considered without any regard to the subject matter, or the declared motives of the grantor, may be deemed to be, that the benificiarios were not to be free persons until the respective periods *591 designated for their going out. u I hereby emancipate” if unqualified, would necessarily mean that the emancipation of the slaves and the execution of the deed were simultaneous. But “I hereby emancipate” on the 25th of December next, would, alone and literally, import that, the manumission was prospective, and not coeval with the acknowledgment of the deed; and the fact that, according to the terms of the deed, some of the slaves were emancipated on the 25th of the succeeding December, and others were emancipated “to go out” at prescribed . . , , , . ... . , periods, would authorize the deduction, that the manumission at a future time, and to go out at specified periods, was intended to have the same meaning and effect: that is, as to each, that the grantor intended to emancipate all his slaves alike, at the successive future periods prescribed in the deed, and not sooner. And therefore, the declaration that he thereby emancipated certain slaves on the 25th of December, may qualify the import of the declaration, that he thereby emancipated others to go out at designated future periods, and may therefore tend to the inference that all were to be free at the times respectively specified, and none before.
And this would be our interpretation of the deed, if we should consider only the grammatical import of the language of it. But in a deed, as well as in a will, the intention, to be deduced from a consistent interpretation of all it exhibits, as well in the subject and declared motive as in language, must prevail over all considerations merely verbal or grammatical.
Then, is there any thing in this deed, which will, without a perversion of its literal import, or a necessaiy repugnance to it, authorize the conclusion that the grantor intended that Spencer’s mother should be free from the date of the deed? We are inclined to think there is; and for the following reasons:—
First. The motive assigned in the deed itself, is—not compassion, kindness, gratitude, or mere gratuity—but it is, as emphatically announced by the grantor, “a clear conviction of the injustice and criminality” of slavery. And can it be presumed that, in the face of that announcement, he intended such a felo de se as -that of per *592 petrating, in the same document, whát he had just denounced as criminal? Or that, in the very act of absolving himself from what he felt and acknowledged to be a crime, he intended to announce the inconsistent determination to persist in the same criminality, by retaining in slavery any of those whom he was emancipating only because, ill his opinion, it was criminal to hold them as islaves? Is it not more consistent with his motives, to suppose that, as, according to his own declaration, some of them were adults and others minors, he intended to retain the services of the former until the succeeding Christmas, only to secure his crop; and that, as to the latter, he deemed it but just and prudential, and altogether compatible with their rights and his duties, to reserve a guardianship over them, as long as they should continue to be minors, and a temporary right, of course, to their services? It is altogether probable, from the face of the deed, that the successive periods at which the most of them were “to go out” were those respectively at which each one would attain majority, or some other identical Sge; and that therefore, and only therefore, the times of their going forth into the world or from his hands, were postponed until they might become qualified to act for themselves, as free men and women should act.
Second. It appears that the grantor intended to emancipate all his slaves. And it is inconsistent with that object, as well as with his severe denunciation of slavery, to give such an interpretation to his deed, as that which would doom to slavery the unborn offspring of those infant females who might and did bear children between the date of the deed, and the periods when they were Ho go out.” But such -Ovould be the lots of all thosé children, if their mothers were slaves after the execution of the deed. And therefore, as such an intention cannot be ascribed to the benevolent grantor, we should sd interpret the deed as to entitle all alike to freedom, if wé can do so without doing violence to any part of it.
Third. The fact that, in expressly reserving a tempo* rary dominion in the last clause in the deed, he denominates his emancipated slaves “the said.people,” implies *593 that he no longer deemed them slaves, or Avas willing even to characterize them by a servile appellation.
These considerations must, we think, be felt as conducing strongly to the conclusion that the grantor intended that all his slaves should be forthwith free “people,” and that, in postponing the times of their actual liberation, he did not mean to put off, to future periods, their enjoyment of personal rights, but intended only to reservé to himself such a title to temporary service and dominion as would effect a transition from slavery to mere servitude and pupilage for a limited time.
Without the last clause in the deed, we would incline to think, that the foregoing would be the proper construction of it. And that interpretation was given by this Court to deeds like this in every essential respect, except that clause, in the cases of Fanny vs. Bryant, (4 J. J. M. 368,) and Charles vs. French, (6 Ib. 331.)
But it seems to us, that the last clause in the deed is not necessarily inconsistent with the conclusion which would, as we have suggested, be otherwise proper. In that clause, the grantor did no more than expressly reserve the right which was previously implied. He did not say in it, that he relinquished no right or title which he ever had; but declared only, that he did not relinquish all right, title, and claim.” Having a legal title to them as slaves, and a right, of course, to their services, if he surrendered the former, and retained the latter right, he did not relinquish “all right, title and claim.” He did not say that they should still be his slaves, and he even for*bore to call them slaves, but styled them “people;” and it is not improbable, that when, through abundant caution* he was expressly making a specific reservation, he would have taken care, had he intended still to hold them as 'slaves, to show that he did not part with his property in them as slaves, even though he was emancipating them only because he felt it to be unjust and criminal to hold them as property. As there is nothing in this last clause which, according to any rational interpretation of it, is irreconcilable with the declared purpose-and motives of the grantor, We do not think that it should control the construction and overrule the deduction which would *594 otherwise be allowable, and which alone will bq consistent in all respects and with every part of the depd. Indeed, the fact that, in that clause, the grantor declared that he did not relinquish all right, implies that he had relinquished some right; and therefore tends- to fortify* rathertban weaken, the construction we are inclined to adopt. And it rather seems to us, that, to give perfect harmony and full effect to ' the whole deed, the persons emancipated should be deemed to have been free from the date of the acknowledgment. And such a deduction j fortified by the consideration that a deed should be construed most strongly against the grantor, and in favor general purpose—and the more especially when liberty or slavery is the question.
A deed k to be construed most the gi-antor-r-eserty or^Uvery is the question.
The decision of the circuit court R^thk^ourtk convinced that it Affirmance must be the consec|uence of serious doubts—especial cisionas l'm' f»I vor.qf liberty.
A free men of ,00'01;’ Ye tanmí cover no compen sation for his services, unless it appears that he was kept in bad faith. But— If, pending his suit for freedom, he is hired out by order of court, the net hire will be awarded to him, if he succeeds.
*594 Wherefore, doubtful and difficult as the true judicial interpretation of the deed may be deemed to be, we incline to the conclusion adopted by the Circuit Court, That construction alone can produce harmony: any other would make the deed strangely irreconcilable with jtse]f.
A , , _ . . _ _ 1 _ . And therefore, even should we feel extreme doubt respccting the legal effect of the deed, an affirmance of the decree of the Circuit Court, would be the proper consequence; for this Court should not reverse a decree, and especially one like this, in favor of human liberty, unless it be satisfied that it is erroneous.
Upon these grounds, and for these reasons, we feel it to be our duty to affirm the decree establishing Spencer's right to freedom.
In coming to this conclusion, we have endeavored to consider the important question involved in this case, as one altogether abstract: so, we know, it should be considered and decided in this forum; for whatever may be said or thought in favo'r of universal liberty, on the one side, or against the policy, or even benefic ence, of emancipation. without colonization, or transplantion, on the other side, it is the duty of this Court to decide between all parties litigant alike, according to the facts of the case and the law of the land.
Upon Spencer’s cross writ of error, it is our opinion that, the Question as to his right to freedom was suffi *595 eiently doubtful to authorize the presumption that he had been held in slavery in good faith; and that, therefore, according to the doctrine recognized by this Court in Aleck vs. Tevis, (ante, 247-8,) he is not entitled to a decree for compensation for his services whilst he was detained by Hudgens; but that he is entitled to the amount due for his hire, under the order of the Circuit Court, during the pendency of this suit—that being in the custody of the law as a deposit for the use and benefit of the party who should eventually appear to be entitled to it.
Wherefore, it is decreed, that the decree .establishing Spencer’s freedom be affirmed; and that the decree withholding from him the sum due for his services pendente lite, be reversed, and the cause remanded with instructions to render a decree conformable'with this opinion.