Judge Gkaham
delivered the opinion of the Oourt.,
We. concur with the Chancellor,, not only in, his exposition of the law of this case, but in his reasons and arguments. We therefore affirm the decree, and adopt as ours, the following opinion and decree of the Chancellor. :
Opinion of Chancellor Nicholas.,
This suit, for freedom, depends upon the proper construction of this clause, in a laconic will: “I give and bequeath to all my negroes their freedom, that my heirs or executors shall have no right nor title to them, after *101 they arrive at the ages hereafter mentioned, the males at twenty-eight years and thefemales attwenty-fiveyears.”
“I give and bequeath to all my negroes their ñeedom, that my heirs or executors shall have no right or title to them after they arrive at the ages hereafter mentioned, the males at 28 years and the females at 25.” Held that under this will, issue born before the arrival at age of 25 was free — that emancipation of the mother was immediate with the will of the owner to retain, for service until 25 years old
The complainant John was born of one of the females after the testator’s death, and before she arrived at twenty-five years, and his right therefore depends on the question whether the will gave his mother immediate emancipation with a postponement of its enjoyment till she attained 25, or gave her only a prospective right of emancipation to take effect, provided, or only when, she attained that age.
My own opinion, apart from all authority, would be that the testator meant immediate emancipation, with a reservation to his heirs of merely the use of their services until they attained the prescribed ages. The result of the opposite construction, which would keep in slavery the issue born before the mother arrived at twenty-five, ought to be rejected, because it would go to defeat a very probable intention, to be gathered from the purport of the will. The testator evidently intended to dispose, by his will, of his whole estate; and as he has directly recognized and by general clauses disposed of the services of the negroes until they arrived at the prescribed ages, as being part of his estate, the presumption is, that if he had intended the issue, born before that time, should be slaves, and as such a part of his estate, he would have so said or made some specific disposition of them as such. The motive of the testator, in emancipating his slaves, was one of benevolence merely, towards the slaves themselves. Why that motive did not apply to and equally operate with him in favor of the after born, it is very difficult, if not impossible, to conjecture. If he intended, from mere motives of benevolence, that the mothers should be absolutely free at twenty-five, why should he, have desired or intended that their children should be slaves for life, or why should he have contemplated a distinction between their children; dooming to perpetual slavery those who were born before the mothers attained twenty-five, and emancipating those who were born thereafter ? In the absence of any assignable motive for *102 such merely capricious discrimination, we cannot properly impute to the testator such intention. The opposite intention, one which would be produced by an equal feeling of benevolence towards the children as towards the mothers, and would prevent any arbitrary distinction among the children themselves, is what should rather be inferred from every rational principle and is what would unhesitatingly occur to every rational mind not affected with the niceties of judicial disquisition. Such being the probable intention, is there any thing in the language used of that technical character which will force us to a different interpretation of the devise? I think not. After a careful comparison of the language used, with that of the deed and devises commented on in the various cases to which I have been referred by defendant’s counsel, I find none of these conflicting directly with what I deem the rational construction of this devise, but several of the cases are strongly in its confirmation. In Fanny vs Bryant, (4 J. J. Marshall,) the language of the deed waff, “I emancipate Julia and her increase after 1st January, 1816.” The question was whether the increase before that day, as well as the children born thereafter, were emancipated. The Court say he never could have intended that the mothers should be free and their children slaves — that such intention would be incompatible with his benevolent motives.
In Charles vs French, (6 J. J. Marshall, 332,) the language of the deed was, “I now immediately liberate Susannah, to go free at the expiration of eight years from this date.” Charles was a son of Susannah, born before the expiration of the eight years, and the Court decided that the deed emancipated him; that the grant- or intended to renounce, at once, all title to the negroes as slaves. That he emancipated them then, but postponed the enjoyment of perfect liberty for eight years ; that in the meantime they were servants, but not slaves; that they remained in servitude but not in slavery; and that this temporary servitude was intended for the benefit of the negroes and not of the grantor.
*103 In Hudgens vs Spencer, (4 Dana, 589,) the language of the deed reads: “I do hereby emancipate the following men, women and children: Judy to go out September, 1808,” &c. &c. “I do relinquish all right to said people after they, severally, arrive at the dates above mentioned, and not before.” This language, it was decided, did emancipate Judy at the date of the deed; that she did not remain a slave until September, 1808, when she was to go out, consequently her son Spencer, born before then, was free. This too, though the Court concedes that the literal import of the deed, without regard to the subject matter and intention, would have required a different decision. But they say, intention, must overrule mere verbal and grammatical considera-tions; that, without the after clause, such would be ever-the proper grammatical construction, as was decided in Fanny vs Bryant, and in Charles vs French. That in postponing the time of actual liberation, the grantor did not mean to put off their enjoyment of personal rights, but only to reserve to himself temporary service. It appears to me to be vastly more difficult to give the effect of immediate emancipation to the language of this deed, than to the devise, in this case, which is, “I give to all my negroes their freedom, that my heirs, &c.,„ shall have no right to them after they arrive at the age of 25,” &c. There you do not have to resort even to intendment in aid of a literal construction, but have-rather to use it for the purpose of preventing the first member of the sentence from carrying immediate emancipation for every purpose: To save the rights of the heirs to their services before attaining the prescrib-. ed ages, we have to resort to intention to show that, some power was reserved to them for that purpose, or. the after clause of the sentence would be nugatory. But whilst so using the intent for the purpose of making the whole sentence harmonize, we can carry it no farther than what is necessary for that object. This is fully accomplished by saying, as the Court of Appeals . did in the cases cited, that the testator meant to manumit, his slaves immediately, but to postpone the perfect en» *104 joyment of freedom, and in the meantime they were to be servants and not slaves. According to the course of decision in this State, complainant is not entitled to. a decree for hire before the institution of the suit, as it does not appear that defendant was a mala fide holder.
Field for appellant; Guthrie Tyler and /. Harrison for appellee.