JUDGE LINDSAY
delivered the opinion op the court.
Thomas Neely, a citizen of Logan County, Ky., died in 1854, leaving as his last will and testament the following paper:
*348 “I, Thomas Neely, of the county of Logan and state of Kentucky, do make, publish, and declare the following to be my last will and testament, viz.:
“Item I. — It is my will and desire that my male slaves— to wit, Richard, born April 10, 1841; John Franklin, born March 28, 1848; Reuben, born May 24, 1850; and George Henry, born July 24, 1852 — be free so soon as they respectively attain the age of twenty-five (25) years; and that my female slave, Malinda Ann, born October 10, 1844, be free so soon as she attains the age of fifteen years.
“ It is also my will and desire that my negro woman Ellinder, be free if she feels disposed to go with my other slaves to the colony of Liberia, in Africa; and I hereby emancipate and set free my above-named slaves, in the manner aforesaid, upon the terms and conditions prescribed in the constitution of the state of Kentucky. And it is my desire that they be hired out by my executor until a sufficient fund is raised for their transportation to the colony of Liberia, in Africa; and that my said slave Ellinder, who is at present about thirty years of age, be free and accompany them if she desires to do so.
“ It is also my will and desire that should the said Ellinder give birth to any child or children, that it or they be, and I hereby set them, flee upon the terms and conditions prescribed above for my other slaves; that is, the males at the age of twenty-five and the females at the age of fifteen years; and that they be hired and transported as aforesaid by my executor. And it is further my will and desire that my said slaves be hired within the county of Logan aforesaid until the time for their said transportation, and that they be not hired out of said county.
“Item II — It is my will and desire that at my death, or so soon thereafter as may be practicable, my whole estate {with the exception of my slaves aforesaid), both real, personal, and mixed, be sold, and that the proceeds thereof be divided into eight *349 equal shares; and I hereby bequeath and give to David N. Neely, Edward Neely, Anna Merritt, Elizabeth Murden, James Neely, Benjamin Franklin Neely, and Francis Marion Neely one share each, and to -the four children of my son Wallace Neely, deceased, three fourths of the remaining share, and the other fourth to be equally divided between my other seven children above named; and I hereby direct my executor to pay over the said proceeds as above specified. (By my whole estate I include all moneys, bank-stock, cash-notes, etc., which I may die possessed of.)
“Item III.&emdash;I hereby appoint my son-in-law, Robert Merritt, of Warren County, executor to this my last will and testament.
“In testimony of all which I hereunto set my name and affix my seal, the 26th day of July, 1853.
THOS. NEELY, [seal.] "Witness: I HuGh BARCLAY, I DAN MoRToN.
“By way of codicil to this my last will and testament, it is my will and desire that all my slaves be sent to Liberia when the oldest boy named in said will arrives at the age of thirty (30) years, which will be in the year 1870, according to the provisions and conditions expressed in said will. I devise to my grandchildren, the children of Wallace Neely, one half of one share of my estate instead of three fourths as expressed in the original will, and the remaining half of said share to pass as directed in said will in regard to the remaining fourth of said share as expressed in said will. My reason for this provision is that I have raised and educated said children in part out of my own means, and my object is to do equal justice to my children and grandchildren so far as I can. “Given under my hand this 22d day of February, 1854.
a Witness: G. W. Norton, “ TH0S‘ NEELY' M. B.' Morton.”
*350 This paper was duly proved and put to record, and the executor, Robert Merritt, proceeded at once to the execution of the trust imposed upon him by the testator with regard to the slaves named in the will.
They were hired out, or held to service by said Merritt, up to the 18th of December, 1865, when the thirteenth article of amendment to the Federal Constitution became part of that instrument.
This suit was instituted, in the name of the commonwealth of Kentucky, for the benefit of the persons named in the will, together with Herdren Turner (the husband of Melinda) and Jerry Wallace (the husband of Ellinder), and their four infant children. They claim that they are joint owners of the sum raised as aforesaid; that Robert Merritt, executor, holds it for their benefit; and that he and the heirs and distributees of W. W. Merritt, deceased, who was his surety, are responsible therefor on the bond given by him as executor.
To the petition and amended petition setting up these facts and asserting this claim to relief the heirs and devisees of the surety, W. W. Merritt, deceased, entered a general demurrer.Robert Merritt, the executor, also demurred. These demurrers were each sustained; and appellants, failing to plead further, their petition was dismissed as to all the defendants. From this judgment they have appealed.
The objection that the action can not be prosecuted in the name of the commonwealth for the use of the parties claiming the beneficial interest in the fund which is the subject of litigation can not be maintained. It was held in the case of Fenwick v. Phillips (3 Met. 88) that to state in the petition the names of the persons for whose use the suit was brought was virtually to make them parties, and that they might afterward, by amended petition, assume the attitude of plaintiffs. The petition in this case not only states the names of those for whose benefit the relief is asked, but these names *351 are also set out in full in the caption. They are virtually parties plaintiff, and the technical objection that they do not so style themselves can not prevail upon general demurrer. (Section 121 of the Civil Code of Practice; Loomis v. Tift, 16 Barbour, 541.)
The right of these plaintiffs to the fund alleged to be in the hands of Merritt, the executor, depends upon the solution of the following questions:
"Whether the will invested the persons named with an absolute or conditional right to their freedom?
Whether they took, under its provisions, a vested right to any portion of the fund to accumulate from their hires, to be defeated only by their refusal at the appointed time to be removed to the colony of Liberia?
Did the adoption of the thirteenth article of amendment to the Federal Constitution exonerate them from the duty of submitting themselves to the control of the executor until 1870, and then of being removed to Liberia, as contemplated by the will of their former owner?
These propositions will be considered in the order in which they are stated.
The testator states it to be his intention to emancipate his slaves “ upon the conditions and terms prescribed in the constitution of Kentucky,” evidently meaning the statutes enacted in obedience to the requirement of said constitution (art. 10, sec. 1). These statutes provide that “the deed of emancipation, and so much of any will as emancipates a slave, shall not vest the absolute right of freedom in the slave until after he shall have removed out of the state.” (Subsec. 5, sec. 1, art. 9, chap. 93, Revised Statutes.) Section 3, same article and chapter, further provides that “ when the person emancipating a slave by deed or will shall fail to provide for his removal put of the state, the county court shall by order direct the slave to be hired out from year to year, until a sufficient fund *352 shall be collected whereby to defray the expenses of moving said slave to some place out of this state, and to maintain him for twelve months.” The fourth, sixth, and seventh sections provide for the appointment of a trustee for the slave, prescribe his duties, and the manner in which the moneys received by him shall be managed and secured, and finally for the contemplated removal.
To ascertain the intention of the testator, his will, so far as it relates to these persons, must be read by the light of these statutory provisions. His manifest object was to secure to them their freedom in any event, subjecting them only to such restraint as was necessary under the laws of the state, and deferring the time when they should enter upon the enjoyment of their liberty for such period only as, in his judgment, would be required to raise the necessary amount to remove them to the country deemed by him the proper place for their future residence.
That their emancipation (except as to Ellinder) was unconditional is evidenced by the language, “And I hereby emancipate and set free my above-named slaves in the manner aforesaid” — the males at the age of twenty-five, the females at fifteen, and Ellinder upon condition that she chose to accompany the others to Liberia. By the codicil the right of the executor to control them was to cease in 1870, and they were then all to be removed, regardless of age or sex. No conditions whatever were annexed. They were to be free, whether the executor hired them out and transported them to Liberia or not. The duty to do these things was imposed upon him, and if he had refused to perform it, under the la\v the county court would have been bound to appoint a trustee to take charge of them, to hire them out, and at the appointed time to remove them to the designated country.
The testator reserved to his devisees and heirs no right or title in or to the services of these people. The postponement *353 of the time of their liberation was for their benefit alone. They were free persons from the day the will was admitted to probate. The executor held and controlled them not because he had any right to their services, nor because the devisees or heirs-at-law of the testator could at any time or upon any contingency assert title to them or to their earnings, but because the law would not permit them to enjoy their liberty within the territorial limits of Kentucky, and required that while they were engaged in earning the fund with which they were to be transported to and supported in Liberia they should be subjected to the control and guardianship of a trustee, to be named by the person granting them their freedom or by the county court of the county in which they might reside. If when the time arrived for their removal from the state these persons, upon examination by the county court, had refused to be removed, they would nevertheless have continued free, subject only to be hired out for the benefit of the county until they should consent to and actually be removed. (R. S., secs. 6, 12, 13, art. 9, chap. 93; 18 B. Mon. 327; 10 B. Mon. 101; 7 Dana, 34; 4 Dana, 589; 6 J. J. Marshall, 332.)
Being free people, although held in a state of pupilage or quasi slavery, they worked for themselves, and under the limitations imposed by the testator and the restrictions fixed by law they were entitled to the benefit of the proceeds arising from their labor. Had the institution of slavery continued to exist until 1870, they could not have claimed the benefit of the fund thus raised without complying with so much of the law as required them to be removed from this commonwealth, and possibly without removing to the country designated by their benefactor; but the adoption of the amendments to the Federal Constitution abrogated these laws, and left them free to remain in Kentucky in ease they chose to do so.
They remained without violating any existing law. Immediately upon the adoption of the thirteenth article of amend *354 ment to the Federal Constitution their emancipation from slavery became perfect and complete. They were no longer subject to be controlled by the county court. The state itself had been deprived of the power to hold them even in temporary bondage (except for crime); arid the functions of the trustee named in the will, but who derived his powers from the state, necessarily ceased.
It results therefore that after December, 1865, these appellants were not Only free people, but that the fund in the hands of their trustee was' their joint property.
They did not forfeit their right to it by declining to subject themselves to the control of the trustee after they became absolutely free, nor by declining to remove from the state in 1870, they having then the right to remain. Property will not be confiscated by the state except for some violation of law; and to hold that these appellants can not recover this fund would be in effect to declare it forfeited to the commonwealth. It constitutes no part of the assets of the testator’s estate, and can in no contingency pass to his heirs at law nor to his devisees. It certainly does not belong to the executor, and he can not hold it against the persons who earned it. He may be entitled to a reasonable compensation for his services, but he must surrender the trust-fund to his eestuis que trust. His failure to do so gave them a cause of action against him, and his demurre.r to their petition as amended should have been overruled.
As to his official sureties as executor our conclusion is different. This fund, as before decided, constitutes no part of the assets of the estate committed to his. charge. Although the will of Neely empowered him to take control of these persons, and to hire them out, etc., yet in accepting the trust, and in the performance of the duties arising under it, he was in no sense administering “the goods, chattels, credits, and effects,” nor “the proceeds of any sale,” nor “the rents and profits of any estate,” which came to him by color of his office. *355 His surety did not covenant that he would faithfully perform his duty as trustee of these appellants, and his heirs and distributees can not be held responsible for any default upon his part in this regard. Their demurrer was therefore properly sustained. The cause was properly transferred as to equity. The fund sought to be recovered is a joint one, to be equally distributed between the appellants who were in being on the 31st day of December, 1870; and it will be proper for the chancellor to take control of any judgment that may be rendered in the action, and make the distribution. The shares of the infant plaintiffs should be retained in the custody and control of the court, unless applied for by their statutory guardians.
As to all the appellees except Robert Merritt the judgment is affirmed; - as to him it is reversed; and the cause is remanded for further proceedings upon principles consistent with this opinion.