## Townsend, Mayor, et al. v. Gorin.
## Townsend, Mayor, et al. v. Montgomery & Williams.

(Decided October 5, 1911.)

### Appeals from Warren Circuit Court.

1. Saloons—City Ordinance Against—Vote of People.—A city ordinance which was designed to prevent the operation of saloons in a community where the majority had voted in favor of the sale of intoxicants is void because in controvention of the statute.

2. Same—Bond—Oath—Forfeiting License.—A city ordinance in a city of the third class fixing the license fee at $5,000, requiring a bond to be given in the sum of $3,000, and providing that the license shall be forfeited and the full sum of the bond payable for any infractions of its provisions and requiring the applicant to take an oath that he will not violate any of its provisions, is oppressive and unreasonable.

BRADBURN & BRADBURN, W. W. MANSFIELD, B. F. PROCTOR and A. C. DULANEY for appellants.

SIMS & RODES, T. W. & R. C. P. THOMAS for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON— Affirming.

On June 6, 1907, an election was held in Bowling Green on the question whether spirituous, vinous and malt liquors should be sold therein. The majority voted against the sale, but on June 28th, 1910, another election was held on the question, which resulted in favor of the sale. In July, 1910, a contest was instituted, and so under the statute the certificate of the canvassing board was not entered upon the records of the county court. The contest board rendered its decision on October 1st, 1910, sustaining the election and its order was entered upon the order books of the Warren County Court on October 10th, 1910. The contestants took an appeal from the decision of the contest board on October 17, 1910, execut-

ing an appeal bond and taking out a supersedeas. On the same day appellees gave notice of an application to the council for license; their application was heard on November 7th, when the council adopted a new ordinance fixing the license fee at $5,000, and adding a number of restrictions which had not been in force theretofore. The committee to whom the application for license was referred reported that the case had been appealed, and that they recommended that no action be taken pending the appeal. On November 12th, the appeal was decided in the circuit court, that court reaching the same conclusion as the contest board. On December 5th, the council refused appellees' application for license as they declined to comply with the ordinance of November 7th, insisting that it was void. On December 12th, an appeal was taken from the judgment of the circuit court to this court; a supersedeas bond was executed, and a supersedeas was issued. On December 21st, appellees filed these suits against the Mayor and the Common Council to obtain a mandamus requiring them to issue the license which had been applied for, insisting that the ordinance of November 7, 1910, was void, and that as the decision of the contest board had been entered upon the county court records, they were entitled to a license. On February 24th, 1911, the appeal to this court was decided, the judgment of the circuit court being affirmed. On April 1, 1911, and after the judgment of this court had become final, appellees served notice that on April 20th, they would move the court to grant them a mandamus as prayed in their petition requiring the Mayor and Common Council to issue them the licenses. On that day the motion was entered, and being heard by the court on April 29th, was sustained, and the mandamus awarded. The Mayor and Councilmen superseded the judgment, and have brought the case to this court.

The first question to be determined is as to the validity of the ordinance of November 7, for if that ordinance is valid the appellees are not entitled to the relief sought as they did not offer to comply with it. The circuit court held the ordinance void on the ground that it was intended to prevent any licenses being issued and was an effort by the council to keep saloons out of the city, although under the statute and the vote of the people, the locality had become one in which licenses should be issued. It is well settled that a municipal ordinance is void if it is arbitrary or unreasonable, or an attempt by the

city to defeat the operation of a statute. We think the ordinance in this case was clearly so intended. It has at the beginning of it a preamble in several paragraphs. One of these paragraphs is as follows:

"Whereas, it is the opinion of the Common Council that the sale of spirituous, vinous and malt liquors, under any condition, manner or form, is dangerous, harmful and contrary to the best interests of good citizenship and good morals, however it may be regulated, conducted or segregated, and that the only good saloon is the saloon out of business for good."

The body of the ordinance shows that it was carefully drawn to effectuate the purpose thus set out in the preamble. It contains a number of restrictions very unusual in such ordinances. Among other things, the license is fixed at $5,000 a year. It is provided that the applicant must give a bond in the sum of $3,000, and that if he violates any of the restrictions of the ordinance, his license shall be forfeited, and he shall pay the city the sum of $3,000 as liquidated damages for the violation of the bond. It is also provided that he must take an oath to obey all the laws of the Commonwealth and all the ordinances of the city with reference to the sale of spirituous, vinous or malt liquors. By the statutes of the State it is provided that the license fee for selling spirituous, vinous and malt liquors in cities of the first class shall not be less than $150 nor more than $1,000; that in cities of the second class it shall not be less than $100 nor more than $500; that in cities of the fourth and fifth classes it shall not be less than $250 nor more than $1,000. The statute regulating cities of the third class to which Bowling Green belongs does not fix a minimum or maximum for licenses, but it evidently was not the legislative intention that the license fee in cities of the third class should be larger than in cities of the first and second class, where the population is more dense, and the volume of trade is greater. The condition of the ordinance that any violation of the ordinances of the city or the laws of the State should cause a forfeiture of the license which cost $5,000, and also a forfeiture of $3,000 in addition, when read in connection with the other provisions of the ordinance, evinces to our minds that the ordinance was not passed in a good faith effort to regulate the subject, but only to prevent any saloons being operated in the city. We, therefore, conclude that the ordinance was invalid, and was properly held void by the circuit court.

It is insisted, however, for appellants that the mandamus was improperly awarded because appellees' application was premature.   Section 2556, Kentucky Statutes, is as follows:

"If it shall be found that a majority of the legal votes cast at any election herein provided for were given for or against the sale, barter or loan of spirituous, vinous or malt liquors in the county, city, town, district or precinct, it shall be the duty of the canvassing board to certify that fact, which certificate shall be delivered to the clerk of the county court, and by him safely kept until the next regular term of the county court, at which term the judge thereof shall have the same spread on the order book of his court, and said entry of the certificate in the order book or a certified copy thereof, shall be prima facie evidence in any or all proceedings under this act."

Section 2566-67, Kentucky Statutes, which provides for a contest of the election among other things, contain these provisions:

"When a notice of the contest shall be executed on the county judge, the certificate shall not be recorded.

"The decision of the board shall be given in writing and signed in triplicate.   One copy shall be delivered to the contestants and one copy to the contestees, and the other shall be delivered to the county clerk of the county in which the contest is pending, which shall be entered on the order book of the county court, and if the decision of the board be that a majority of the legal votes cast at the election were against the sale of such liquors, the entry of such decision shall have the same effect as the recording of the certificates of the examining board as hereinbefore provided."   (Section 2566, Kentucky Statutes.)

"The contestants or contestees shall have the right to appeal from the decision of the board to the circuit court of the county where the contest is pending, in the same way as appeals are taken from the quarterly court to the circuit court; an appeal may also be taken from the circuit court to the Court of Appeals."   (Section 2567, Kentucky Statutes.)

The law regulating appeals from quarterly courts to circuits courts is contained in the Civil Code, sections 724-731.   Section 724 provides as follows:

"The party appealing shall produce to the clerk of the court to which the appeal is taken a certified copy of the judgment and amount of costs, and cause to be exe-

cuted before him, by one or more sufficient sureties to be approved by him, a bond to the effect that the appellant will satisfy and perform the judgment that shall be rendered upon the appeal; whereupon, the clerk shall issue an order to the judge, mayor or justice, rendering the judgment, to stay proceedings thereon; and to transmit to the office of said clerk all the original papers in the case; and the appellee shall be summoned, actually or constructively, as is provided in chapter 2 of title 4, to appear and defend the appeal.''

The construction of these statutes was before us in Commonwealth v. Weisenburg, 126 Ky., 8. In that case the sale of intoxicants had been prohibited in Cloverport prior to an election held on May 5, 1906. The canvassing board certified that a majority at that election voted in favor of the sale. On May 17, notice of contest was given; on June 26, the contest board dismissed the contest, and before an appeal was prosecuted in the circuit court, the city authorities issued a license to the appellees. After this on August 10, an appeal was taken from the decision of the contest board to the circuit court. In the circuit court the election was held void in January, 1907. On January 3, the judgment of the circuit court was superseded, and an appeal taken to this court. On that appeal the judgment of the circuit court was affirmed. The question before the court was as to the effect of the supersedeas which had been obtained on the appeal to the circuit court, and on the appeal to this court. Determining the question, the court said:

''If the authorities had the legal right to issue license, the judgment of the circuit court annulling the election would not, pending the appeal, affect the rights of the licensees. The license was issued for the period of one year, but the right to operate under it was subject to be taken away at any time by final adjudication that the election was void. If the election during the life of the license had been set aside by the judgment of this court, or the judgment of an inferior tribunal or court from which no appeal was prosecuted, the decision would relate back to and restore the status that existed immediately preceding the election; and in such event the local option law in force prior to May, 1906, would have continued in operation, and, therefore, the sale of liquor would have been illegal, notwithstanding the license. But the law allows all appealable orders to be superseded and suspended pending an appeal; and when the judgment of

the circuit court declaring the election void was appealed from, and its operation and effect suspended by the execution of a supersedeas bond, and the issual of an order of supersedeas, the effect was to leave affairs in the same condition they were just before the judgment was entered. Speaking of the effect of a supersedeas, this court in Runyon v. Bennett, 4 Dana, 589, 29 Am .Dec., 431, said: "A supersedeas suspends the efficacy of a judgment, but does not like a reversal, annul the judgment itself. Its object and effect are to stay future proceedings, not to undo what is already done. A consequence of this is that whatever is done under the judgment, after and while it is superseded, being done without authority from the judgment, which is then powerless, and against the authority and mandate of the supersedeas, should be set aside as improperly and irregularly done." To the same effect are Webber v. Tanner, 64 S. W., 741, 23 Ky. Law Rep., 1107, and Hey v. Hardin, 78 S. W., 136, 25 Ky. Law Rep., 1454. Therefore the judgment of the circuit court which was rendered inoperative for the time being by an appeal and supersedeas, preserved the status existing before the judgment was rendered, and did not annul or interfere with the privilege of appellees to conduct their business under the license, if it gave them such right; and this continued during the life of the licensee, or until the appeal was disposed of by this court, and its judgment had become final."

We adhere to the rule as thus laid down. We do not see that there is any difference whether the wets or the drys win; the rule in either case is the same. The purpose of the statute in requiring the certificate of the canvassing board to be kept until the next regular term of the county court before it is recorded, is to give an opportunity to the defeated side to contest the election, and if the contest is instituted and the notice is served in the meantime on the county judge, the certificate is not to be recorded. In that event, the status existing before the election continues. When the contest is decided, the decision .of the contest board shall be entered on the order book of the county court, that is, it is the duty of the county judge to have it so entered. But this provision of the statute is to be read in connection with the provision immediately following to the effect that the defeated party may appeal to the circuit court in the same way as appeals are taken from the quarterly court to the circuit court. If the appeal is taken before the coun-

ty judge enters the certificate on the order book it should not thereafter be entered on the order book. If the appeal is not taken until after the county court has entered the decision upon the order book, then the judgment of the contest board is in effect until the appeal is taken and the judgment is superseded; but when the judgment is so superseded, what has been done under it which was legal when done, is not thus rendered illegal; but no further steps can be taken under the judgment after the supersedeas is issued; for the judgment is thus rendered inoperative so long as the appeal is undetermined. In the same way when the appeal is determined in the circuit court, the judge of the county court may then record the decision on his order book unless an appeal with supersedeas is immediately taken, and everything that is done under the judgment before it is superseded, will be valid, but when the judgment is superseded its vitality is taken away, and nothing thereafter can be done by virtue of it, as it then stands as though it had never been rendered until the appeal is determined. When an appeal is taken from the decision of the contest board to the circuit court and the judgment is superseded, the situation is just the same as in the case of an appeal in an ordinary action from the quarterly court to the circuit court with supersedeas. The same rule applies when an appeal with supersedeas is taken to this court from the judgment of the circuit court, as in other cases appealed to this court with supersedeas.

The statute should be carried out according to its spirit by both sides. Its purpose is to allow the defeated side to appeal with supersedeas, and thus preserve the existing status. It is also its purpose that there should be no delay in taking the appeal where it is desired to preserve the status. The county court should not enter the certificate on its order book without giving the defeated side a reasonable time to obtain a supersedeas where it knows they desire to do so, and on the other hand when a supersedeas is desired the appeal should be taken at once. If it is delayed and the judgment of the contest board is entered on the records of the county court, then the status is changed, and remains changed until the supersedeas is taken out.

In this case, however, the motion for a mandamus was not made until after the judgment of this court had become final. The supersedeas was no longer in force; the Mayor and Council were refusing to do anything insist-

ing on the validity of the ordinance above referred to; and this being void, the circuit court properly awarded the mandamus. The city of Bowling Green is not a nesessary party to a suit against its officers to obtain a mandamus, although the validity of one of the ordinances of the city may be incidentally drawn in question.

Under the facts as shown by the record, it would have been an idle form for appellees to have renewed their application to the council. The law does not require a man to do idle things, and when it was evident to the circuit court that the council were refusing to issue any licenses, and would not unless required to do so by mandamus, he properly sustained the motion of appellees. It was to the interest of all that the controversy should be settled.

Judgment affirmed.