CASE 28.—ACTION FOR THE SETTLEMENT OF THE ES-
TATE OF WILLIAM SCHLICKMAN, DECEASED
IN WHICH THE CITIZENS NATIONAL BANK OF
COVINGTON PRESENTED A CLAIM.—June 17,
1910.

## Schlickman, &c. v. Citizens' Nat. Bank, Covington.

Appeal from Kenton Circuit Court (Common Law and Equity Division).

M. L. HARBESON, Judge.

From the judgment the administrators of William Schlickman appeal.—Reversed.

1. Executors and Administrators—Construction of Will—Powers of Executor.—Where one engaging in business as a member of a corporation, practically all the stocks of which he owned, executed a will whereby he authorized his executor to carry on the business, with full power to exercise his judgment, and to sell all or any of the estate, and to do anything concerning the estate which the testator could do if living, the executor had power to manage the business and to borrow money if necessary, and to bind the state as principal or surety therefor.

2. Executors and Administrators—Powers of Executors—Wills —Presumptions.—The court will not presume that a testa- tor, conferring on his executor unlimited authority in the management of the estate, intended that the authority should be exercised by any one else, unless the will, fairly construed, is susceptible of no other interpretation.

3. Executors and Administrators—Duties.—An executor, as such, must collect and preserve the personal estate, pay debts and cost of administration, and distribute the surplus to those entitled thereto, as directed by the will or provided by law, and the duties imposed by the will of reducing real or mixed property to personalty for distribution, are executorial duties, but duties imposed having an aim beyond the settle- ment of the estate are personal to the executor in the na- ture of a trust and for their performance he is bound in his capacity as trustee only.

4. Executors and Administrators—Administrator With Will Annexed—Powers.—Ky. St. sec. 3892, authorizing an administrator with will annexed to exercise the powers of an executor, gives the administrator such powers as the executor had merely as such, but not the powers conferred on the executor by virtue of any trust imposed on him by the will not looking primarily to the settlement of the estate, though the will directing him to execute the trust designates him as executor.

5. Executors and Administrators—Administrator With Will Annexed—Powers.—The powers of an executor under a will authorizing him to qualify and act without bond, with power to do all things concerning the estate that testator could do if living, to manage and carry on testator's business, and to sell any or all property that he deems desirable and providing that the devisees shall be subject to the power vested in the executor, and shall not limit his power to sell or carry on the business, do not pass to an administrator with will annexed, who may not bind the estate for funds to carry on the business.

ROBERT C. SIMMONS for appellants.

SCHMIDT & HOLMES for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Reversing.

William Schlickman, a resident of Covington, Ky., died in March, 1894. For many years prior to his death he had been engaged in the pork-packing business, first in partnership with one Daniel Ruttle and later as a member of the Ruttle, Schlickman Packing Company, a corporation, which was organized about 1890. He and Ruttle, his former partner, owned practically all of the stock, and, in 1892, he bought the interest of Ruttle in the business, so that, at the time of his death, he owned practically all of the stock of the packing company. A few shares which were not owned by him were held by employes merely for the purpose of organization. He left a will giving all

of his property to his children, some of whom were, at the date of his death, quite young. He also provided in his will that his executor, Fred Pieper, should take charge of his estate and manage his business; and he gave to said executor power to sell and convey his real estate. He also designated him as guardian of his minor children. Shortly after his death his will was admitted to probate, and Fred Pieper, his friend named therein as executor, qualified as such, took charge of the estate, and managed it and operated the pork-packing business until in April, 1899, at which time he resigned and was succeeded by H. W. Schlickman and J. H. Dorsel, son and son-in-law of the decedent, as administrators de bonis non with the will of William Schlickman, deceased, annexed. Thereafter the administrators conducted the business of the Ruttle, Schlickman Packing Company, and, as administrators, became the indorsers for said company, on several notes to the Citizens' National Bank of Covington. The aggregate amount of these notes in 1904, when suit was brought to settle the estate of William Schlickman, amounted to more than $10,000. Upon the institution of the suit to settle, the case was referred to the master commissioner to hear proof of claims. The bank presented its claim before the master, proved as the law directs, but the master was of opinion that the administrators were without power or authority to bind the estate of their decedent, and he rejected said claim. On exceptions filed to this report, the case was submitted to Hon. E. L. Worthington, sitting as special judge, and, upon full consideration, he held that, under the will of William Schlickman, his administrators with the will annexed had the power and authority to bind his estate in the way and manner in which they did, and that the

claims presented by the Citizens' National Bank were good and valid claims against said estate, and he directed and ordered them to be paid. From this finding and judgment this appeal is prosecuted.

Two propositions are raised for our consideration: First, did the will of William Schlickman authorize his executor to contract debts and bind his estate for the purpose of carrying on the pork-packing business of the Ruttle, Schlickman Packing Company? And, second, if such power is conferred upon the named executor as would authorize the creation of these debts by him so as to bind the estate therefor, did such authority pass to the administrators de bonis non with the will annexed; or was it personal to Pieper, the named executor? Said will which we are called upon to construe is as follows:

"I, William Schlickman, of Covington, Kenton county, Kentucky, being of sound and disposing mind and memory, and recognizing the uncertainty of life, do hereby make this my last will and testament, to-wit:

"First. I direct my executor hereinafter named out of my estate to pay all my just debts.

"Second. I hereby bequeath and devise unto my children all of my estate of whatsoever kind and wherever situated to have and to hold share and share alike, the said children being named, to-wit: Emma, wife of John Dorsel, Henry Schlickman, Leo Schlickman, Clara Schlickman, William Schlickman, Mary Schlickman, Frederick Schlickman, Margaret Schlickman and Norbert Schlickman.

"Third. I hold the title to a house and lot on the west side of Holman street between Fifteenth and Sixteenth streets, in Covington, Kentucky, the lot being conveyed to me by Crockett, which property has

been mortgaged by me to the Kentucky Perpetual Building and Loan Association for $1,500.

"This property belongs to Mrs. Mary Frecking and the title is held by me in order to borrow said sum from said Building Association, and I am also the surety on a note for $400 to Lambert Determan and the title to this property is held by me to secure the payment of said note and whenever said Building Association debt is satisfied and said note paid so that my estate is relieved from all liability on account of either of said debts then my executor will by a proper deed convey the said property to said Mary Frecking giving her free and unincumbered title thereto.

"Fourth. I appoint Fred Pieper guardian of my infant and unmarried children being all of my children hereinbefore named except Emma Dorsel.

"Fifth. I hereby nominate as executor of this my will the said Fred Pieper and ask that he be allowed to qualify and act as such without giving bond and I hereby fully authorize and empower him as my executor to do any and all things concerning my estate that I could do if living, leaving it to his judgment and discretion as to how he shall manage the same or carry on my business and giving to him full power and authority to sell and convey any or all of my real estate when in his judgment it may be desirable to do so, and the devise to my children herein is especially subject to the power thus vested in my said executor that is the devise to them is in no way to be construed as a limitation on the power of said executor to sell and convey by deed said real estate as to carry on said business.

"In witness whereof I, the said Henry Schlickman, do hereby this 26th day of February, 1894, set my

hand in the presence of Henry Linneman and J. W. Bryan whom I have requested to attest this will. Wm. Schlickman.''

The record discloses that, at the date of the death of William Schlickman, the pork-packing business owed approximately $22,500.  It was the custom of this company to borrow money with which to purchase the hogs which were slaughtered and packed during the fall and winter season, and, when the cured meats, etc., were sold in the following spring and summer, these obligations would be discharged. After the death of William Schlickman, the packing company did not make money, and this is particularly true after the business passed into the hands of the administrators de bonis non with the will annexed. It cannot be said that this failure of the business to make money was due to any mismanagement on the part of the administrators; but it may more properly be chargeable to the fact that the company, with its limited capital, was unable to compete with the large packing establishments which, by reason of their improved business facilities, were enabled to buy upon more favorable terms and sell to better advantage than their less fortunate rivals.  The business steadily lost money, and when all of its assets had been exhausted the company was still largely indebted.  Of this indebtedness, $10,080 was due to the Citizens' National Bank, and, upon the notes evidencing same, the administrators of the estate of William Schlickman with the will annexed had sought to bind his estate as surety.

At the date of the death of decedent, the packing company had assets worth approximately $40,000, and it was indebted to the First National Bank in the sum of $22,500, and the estate of decedent was bound

therefor.  By the fifth clause of his will he authorized
and directed his executor, Pieper, to do any and all
things concerning his estate which he, if living, could
have done.  It is conceded that decedent was not en-
gaged in any other business than that of pork pack-
ing, and when he referred in his will to "my busi-
ness," and authorized his executor to "carry on my
business," he evidently referred to the pork-packing
business, although the business, in fact, was not
owned by him in its entirety.  He was making pro-
vision in his will to enable his executor to manage
his estate, and particularly to manage the packing
business in such a way as he believed would make it
profitable to his estate.  He evidently did not desire
that it should be precipitately wound up, and for
this reason he authorized his executor to carry on
his business just as he would himself, if living, have
managed and carried it on.  Clearly, it was the in-
tention of the testator that his executor should have
power and authority to borrow money, if need be,
for the conduct of this business, and he understood
that, if the executor did so, his estate would be bound
therefor.  To hold otherwise would be to defeat the
clearly expressed intention and desire of the testator.

The entire estate of the decedent was, of
course, bound for the payment of notes amount-
ing to $22,500 which the Packing Company
owed at the date of his death and upon
which he was security.  These claims were
held by the First National Bank.  As they matured
they were taken up and either paid off by money
realized out of the business of the packing company,
or furnished by the executor, or else from money
borrowed by the packing company, upon its notes,
from the Citizens' National Bank, with the executor

as surety.  So that, in a reasonably short time after the executor took charge of the business of the packing company, all of its indebtedness to the First National Bank was paid off and fully satisfied, and from that time on the packing company's account was kept with the Citizens' National Bank, and from it such sums of money as were needed in its business were from time to time borrowed.  The old notes were taken up in whole or in part by the execution of new ones.  And thus the business was conducted until Pieper resigned and the administrators with the will annexed were appointed.  At this time the packing company owed the bank about $13,000.  Thereafter all this indebtedness was discharged in the same way and manner as the indebtedness to the First National Bank had been discharged, except, perhaps, that after the administrators with the will annexed took charge of the business no money was furnished by the estate of decedent.

We are of opinion that the executor, Pieper, was authorized, under the power given him by the fifth clause of the will, to borrow money to carry on the business of the packing company, and that the entire estate of decedent was bound therefor; and it is immaterial whether he signed these notes as principal or as surety, so long as it was to enable the company to raise money necessary to properly carry on its business, or rather, to carry on the business in a way which he deemed to be proper.  The estate, in either event was bound therefor.  He did not find it necessary to bind the estate as principal in order to raise money for the packing company, but, by endorsing the notes as surety for the packing company, he enabled it to raise such money as it needed. The administrators with the will annexed, upon taking charge of

the estate and of the pork-packing business, undertook to conduct it practically as the executor had done. They borrowed money from the appellee bank as it was needed in the business, and, as the manufactured products were sold, the indebtedness was discharged. All of the moneys which the executors had borrowed from the appellee bank were paid off and discharged by the packing company, either from moneys realized by a sale of its products, or else by the execution of new notes. None of the notes presented are signed by the executor, and only one of them was executed within the first twelve months after his resignation. So that, while the executor was, by the terms of the will, authorized and directed to pledge the estate for money needed to carry on the packing business, appellee must fail unless the power given by the fifth clause of the will is broad enough to invest the administrators with the will annexed with the same power to bind the estate as the executor had.

What did the testator intend by the use of the language therein employed? That he had the most unlimited confidence in the honesty, integrity and business capacity of his friend Pieper is quite evident, for he not only invested him with absolute power as to the management and control of his property and business, but requested that the court should require of him no bond for the faithful execution of the trust reposed in him; and, in addition, he selected him as guardian for his children, most of whom were of tender years. It can scarcely be presumed that he intended, by the language used in this clause of his will, that his unlimited authority as to the management of his estate should be exercised by any one else. No such presumption should be indulged unless the language employed by the testator, when fairly con-

strued, is susceptible of no other interpretation. The line of demarcation between that class of cases where the duties imposed upon an executor by a testator are such as pass to and are to be discharged by his successor, and that other class of cases where the duties imposed are personal to the executor, is not clearly drawn, and, from the very nature of things, cannot be. Each case must be determined by the facts connected therewith. This court has frequently been called upon to determine whether powers given to an executor named in a will pass to and are to be performed by his successor, the administrator with the will annexed. This question has usually arisen in cases where there has been an attempt to hold the sureties on an administrator's bond liable for loss of funds growing out of the commission of acts which did not properly or necessarily devolve upon him by virtue of his office of administrator with the will annexed. It has been uniformly held, in such cases, that no liability on the bond existed where the power given was personal to the executor, but, where it was not, such liability invariably attached. Clay & Craig v. Hart, 7 Dana, 1; Speed's Ex'rs v. Nelson's Ex'rs, 47 Ky. 499; Warfield v. Brand's Adm'r, 13 Bush, 84; Givens v. Flannery, 105 Ky. 451, 49 S. W. 182, 20 Ky. Law Rep. 1355.

This proposition is not disputed by counsel for appellee, but it is earnestly contended that the duties imposed by the fifth clause of the will are purely executorial, and that no trust relation is created by the language used in said clause. The duties of an executor are to collect and preserve the personal estate, pay the debts and costs of administration, and distribute the surplus to those justly entitled thereto, either as directed by the will or provided by law.

Other duties may be, and frequently are, imposed upon the executor by the will, and where these duties look toward reducing real or mixed property to personalty for the purpose of distribution, they are likewise regarded and treated as executorial duties. . But when duties are imposed that have an aim further and beyond that of the settlement of the estate, they are treated as personal to the named executor and looked upon in the nature of a trust, and the executor, in his capacity as such, is not bound for their performance, but only in his capacity as trustee. This being so, the question here under consideration is treated of only in that class of cases where there is an attempt made to charge the administrator's bond for the mismanagement or misappropriation of the funds, for the executor is always primarily liable, and it is immaterial whether as trustee or executor, his liability attaches just the same. Hence, we must look to that class of cases where the circumstances are such as to require the court to deal with the separate duties and responsibilities of executors in their dual capacity of executor and trustee. This distinction is well stated in the case of Warfield v. Brand's Admr. 13 Bush, 77, where Judge Cofer, speaking for the court, said: "But we think we hazard nothing in saying that when the faithful exercise of the power or performance of the duty is not secured by the form of bond prescribed by the statute, and the power or duty does not relate to the settlement of the estate and its distribution according to the ordinary course of administration, and especally when the estate, after being otherwise ready for distribution to those in interest, is required by the will to be held in the hands of the executors, upon trusts which may extend over a long period, and from their character must be pre-

sumed to have been made by the testator because of his personal confidence in the fitness of his executors for the discharge of the duties imposed such power or duty will not pass, under the statute, to an administrator de bonis non with the will annexed.'' The reason that such duties do not pass is that they are personal to the executor named. The duties imposed upon Pieper by the fifth clause of the will are in no wise executorial. They do not look to the settlement of the estate, but to the operation of the packing company, and it can hardly be seriously contended that the direction on the part of the testator to his named executor to operate a corporation for an indeterminate period was regarded by him as anything short of a personal trust or confidence reposed in his friend, to whom he was giving most unusual and extraordinary power and authority over his estate.

But, it is urged, under section 3892, Ky. St. (Russell's St. sec. 3938), these duties passed to and devolved upon the administrator with the will annexed, and hence, whether in their nature in fact executorial or not, being treated as such by the statute, the administrators with the will annexed had authority, under and by virtue of said statute, to bind the estate of decedent in the way and manner in which they did. This same statute was in force when the case of Warfield v. Brand's Admr, above referred to, was written, and in that case the court held that duties which were purely personal to the named executor did not pass to and devolve upon the administrator with the will annexed, as shown by the following excerpt from the opinion: ''The statute was, no doubt, enacted solely to facilitate the settlement of estates, and we are unwilling to believe that the Legislature intended to go beyond what was necessary for that

purpose, and to confide to administrators de bonis non those delicate and responsible trusts which testators sometimes confide to their chosen executors. Powers are sometimes confided to executors, or, more properly, to the person filling the office of executor, as a trustee, which are so delicate, and of such a nature, that even the chancellor cannot execute them. Yet if the construction contended for by the appellee be adopted, the Legislature has, by a dogmatic statute, conferred power for that purpose upon an administrator with the will annexed." And in the later case of Givens v. Flannery, 105 Ky. 451, 49 S. W. 182, 20 Ky. Law Rep. 1355, although the will under consideration imposed certain duties upon the executor, this court held that their execution did not pass to and devolve upon the administrator with the will annexed, as is evident from the following: "It is well settled in this state that the surety in an executor's bond is only liable for the duties which the law imposes upon the executor, and that he is not liable where the executor discharges the duties of a trustee, although the will, in imposing these duties, may not designate him as a trustee." And then, after citing the cases of Allen v. Kennedy, 8 S. W. 882, 10 Ky. Law Rep. 336, Lasley v. Lasley, 1 Duv. 117, Neely v. Merritt, 9 Bush, 346, and Warfield v. Brand's Adm'r, 13 Bush, 98, the court said: "We deem the rule too well settled now to be departed from." And in the case of Major v. Herndon, 78 Ky. 123, where, in the will under consideration, the testator's wife was named as executrix, with directions that she should carry out the provisions of the will, the court held that, although named as executrix, she was in fact holding the estate which she had administered as trustee, and not as executrix.

Reading the statute under consideration in the light of the construction placed upon it in the forego-

ing opinions, it is clear that the trouble with counsel for appellant lies in its application. In none of the cases where the application of this statute has been involved has the court held that any duty which rightfully devolved upon the executor as such might not be discharged by the administrator with the will annexed. But it has been distinctly held that many of the duties imposed upon executors are not executorial in their nature, but personal to the executor, and it is this latter class of powers and duties which do not pass to the administrator with the will annexed and are not covered by the statute. For the statute only provides that the administrator with the will annexed shall exercise all power and authority, and possess the same rights and interest, and be responsible as the executors named therein, and this court has construed this to mean such power as the executor named in the will has by virtue of his office as executor, but does not pass to the administrator with the will annexed such powers as the person named as executor may have under and by virtue of any trust reposed in him by the will which did not look primarily to the settlement of the estate. And this is true, even though in directing him to execute such trust he is designated in the will as executor, the court being guided in reaching its conclusion rather by the object sought to be obtained by the power than by the name used to designate the one directed to execute it.

Much stress is laid by appellee upon the phrase in the fifth clause "and the devise to my children herein is especially subject to the power thus vested in my said executor that is the devise to them is in no way to be construed as a limitation on the power of said executor to sell and convey by deed said real estate or to

carry on said business.'' The effect of this sen-
tence in the fifth clause of the will was merely to post-
pone the period of distribution of the estate until such
time as in the judgment of Pieper was necessary and
proper. Of course, it necessarily follows that, so long
as he was operating the packing business or postpon-
ing the sale of the real estate, no final distribution
could be made.

It is very apparent from even a casual considera-
tion of the will in question that the testator desired to
place in the hands of his friend Pieper the manage-
ment and conduct of his business and the settlement
of his estate, because of the confidence which he had
in his honesty, integrity, and business ability. This
confidence finds expression not only in the fact that
he directed that the court should require of his friend
no bond whatever, but in the further fact that no lim-
itation was placed upon his judgment as to the man-
ner in which the business should be conducted or the
length of time it was to be operated by his friend. It
cannot be that he contemplated that these extraordi-
nary powers and great confidences were to be dis-
charged by or reposed in any one other than his friend
Pieper, and although in granting same he directs that
they shall be discharged by his executor, inasmuch
as he named him, these words must be regarded as
descriptive of the person rather than intended to be
applied to any one who might fill the office. So that,
while Pieper had the right to operate the business of
the packing company, and pledge the estate of de-
cedent for such funds as in his judgment it became
necessary from time to time to borrow, these were
rights which he possessed and enjoyed under and by
virtue of the personal trust reposed in him by the
will, and not in his capacity as executor. This being

true, these rights and powers did not pass to the administrators with the will annexed, and they were without authority to bind the estate of their decedent in the execution of the notes in question, and their acts in this particular are of no binding force or effect.

The exceptions to the report of claims filed by the master commissioner should have been overruled. Judgment reversed and cause remanded, with instructions to do so.