## Schlickman, et al. v. Dusing, et al.

. (Decided May 14, 1918.)

### Appeal from Kenton Circuit Court.

1. Executors and Administrators—Administrator With the Will Annexed—Powers.—Whether an administrator with the will annexed has the powers, in the sale of property, conferred on the

executor named in the will, and may exercise them as provided in section 3892 of the Kentucky Statutes, depends on the nature of the powers confided to the executor.

2. Executors and Administrators—Will Hold Property Purchased in Trust for Infants.—Where an executor or administrator purchases property owned by the estate, he will hold it as trustee for the heirs, who will be the beneficial owners.

3. Infants—Void Sale of Land of—When Estopped to Recover— Ratification.—Where there has been a void sale of infants' land by an administrator, the infants, after reaching their majority, will be estopped to recover the land if, after arriving at age, they accepted the proceeds of the sale with a full knowledge of the facts.

4. Infants—Void Sale of Land of—When Will Be Estopped to Recover—Limitation.—Where there has been a void sale of infants' land their acceptance of the proceeds of the sale, after arriving at age, will not amount to a ratification of the sale unless they had actual knowledge of all the facts. In the absence of actual knowledge their acceptance, after arriving at age, of the proceeds will not operate as a bar to a suit to recover the property until after the expiration of ten years from the date of acceptance.

5. Infants—Judgment—When Binding Upon.—Where an infant is a party to a suit and properly before the court, a judgment in the action will bind him to the same extent as an adult, subject to the remedies allowed infants.

JOHN L. RICH and W. E. TYLER for appellants.

S. D. ROUSE and H. C. THIESSEN for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

In 1894 William Schlickman died testate a resident of Kenton county, leaving surviving him the following children: Emma 20 years of age, Henry 18, Leo 16, Clara 13, William 11, Mary 7, Frederick 5, Marguarette 3 and Norbert 2 years of age.

In his will, he devised his estate to his children share and share alike. He appointed Fred Pieper executor and also guardian of his infant and unmarried children, all of them being infants and unmarried except Emma who had married John Dorsel; and the fifth clause reads as follows: "Fifth. I hereby nominate as executor of this my will the said Fred Pieper and ask that he be allowed to qualify and act as such without giving bond and I hereby fully authorize and empower him as my executor to do any and all things concerning my estate that I could do if living, leaving it to his judgment and discretion as to how he shall manage the same or carry on my

business and giving to him full power and authority to sell and convey any or all of my real estate when in his judgment it may be desirable to do so, and the devise to my children herein is especially subject to the power thus vested in my said executor that is the devise to them is in no way to be construed as a limitation on the power of said executor to sell and convey by deed said real estate as to carry on said business.''

Fred Pieper, who had been nominated executor and guardian and had qualified as such, discharged the duties of these offices until April, 1899, when he resigned, and John H. Dorsel, who had married Emma Schlickman, was appointed administrator of the estate with the will annexed and also guardian of the infant children.

It also appears that the testator and one Daniel Ruttle were the joint owners of some real estate, and after the death of Ruttle, in a suit to settle these estates, this jointly owned land was sold under decree of court, and at the sale made in 1901, John H. Dorsel became the purchaser and out of assets of the Schlickman estate he paid to the Ruttle heirs their share, one-half of the proceeds of the sale, and in February, 1902, a deed was made by the court to Dorsel conveying the land to him as administrator with the will annexed of William Schlickman. Within a few days after the property had been thus conveyed to Dorsel, he privately sold and conveyed the same to the appellee, Dusing, for $6,750.00, with which amount Dorsel charged himself as administrator with the will annexed.

After this, John Dorsel, as administrator, settled his accounts in the Kenton county court and in this settlement was charged with the $6,750.00. Subsequently he brought a suit in the Kenton circuit court for a settlement of the estate of William Schlickman and in this suit all of the Schlickman children were made parties and properly brought before the court. This settlement suit progressed to a judgment, and the accounts of Dorsel as administrator were finally confirmed by the Kenton circuit court in 1911.

Nothing further was done in respect to any matters connected with the estate until 1915 when this suit was brought by the children of William Schlickman—except Emma—against Dusing to recover the property sold to him by Dorsel and damages for its detention, upon the ground that the sale by Dorsel to Dusing was void and

this being so they were the owners of the property and entitled to its possession. This suit in its beginning was a common law action in ejectment but finally got into equity and a number of issues presented in many amended pleadings were brought into it.

Upon submission the lower court dismissed the petition and the children appeal.

It is admitted that Dorsel, in 1899, qualified as administrator with the will annexed and as guardian of the infant children of Schlickman; that he purchased the Ruttle-Schlickman real estate heretofore mentioned while he was acting as administrator and guardian, and that it was conveyed to him as administrator with the will annexed; that he paid the Ruttle heirs for their interest in the estate out of money in his hands as administrator of the Schlickman estate; that he sold this real estate in 1902 to Dusing for $6,750.00; that in August, 1902, he made an *ex parte* settlement of his accounts as administrator in the Kenton county court and in this settlement was charged with the proceeds of the real estate received from Dusing, and that these proceeds were subsequently distributed to or accounted for to the Schlickman children.

On these facts, it is the contention of the Schlickman children, who brought this suit, that Dorsel purchased and held this land as trustee for their use and benefit; that the children who were infants at the time could not be and were not divested of their title to the land by the sale made to Dusing, although it should be admitted that they subsequently received their share of the proceeds of the sale; that the infant children could not be divested of their title to this land owned by them and held in trust for their use and benefit by Dorsel, except by and through a suit brought in the manner provided in the Civil Code for the sale of infants' real estate and so the sale made by Dorsel to Dusing was void.

On the other hand, the argument is made in behalf of Dorsel and Dusing, first, that Dorsel, as administrator with the will annexed, had the right under the power conferred on his executor by the will of Schlickman, to sell the land and pass good title thereto; and second, that if he did not have this authority, the children of Schlickman who received after their majority their share of the proceeds of the real estate sold to Dusing and retained possession of the same are barred from seeking to re-

cover the real estate, and this upon the ground that after their majority they had the right of election, and having elected to take the proceeds they are now estopped to recòver the property itself.

On the question as to the right of Dorsel, as administrator of the will annexed, to sell the property to Dusing, we are of the opinion that he did not have such authority under the will of Schlickman. It is provided in section 3892 of the Kentucky Statutes that: "An administrator with the will annexed shall possess and exercise all power and authority, and shall have the same rights and interest, and be responsible in like manner, as the executors herein named, or any of them." But, it has been frequently held that this statutory provision does not, in all cases, confer upon an administrator with the will annexed all the power and authority confided by a testator to his executor, and that whether an administrator with the will annexed can exercise all the power confided to an executor depends upon the nature of the power confided to the executor and the manner of its execution as described by the testator in delegating the power.

A more extended discussion of this feature of the case seems unnecessary because it was virtually decided in the case of Schlickman v. Citizens National Bank, 139 Ky. 268, where the court had before it for construction the fifth clause of the will here in question, that Dorsel as administrator with the will annexed did not have the power confided to the executor. In the opinion in that case, and the authorities therein referred to, there will be found a statement distinguishing the power that an administrator with the will annexed may exercise from those that he may not exercise. In addition to this it would seem that when Dorsel bought this property at the judicial sale and took the title to himself as administrator, the sale of it, thereafter made by him, was not a sale made under any supposed authority found in the will of Schlickman, because the sale under the decree took the estate from under the will and thereafter it could not be subject to its provisions.

Having this view of the matter, we are further of the opinion that Dorsel held this property as trustee for the use and benefit of the Schlickman children, who were the real and beneficial owners of the property. In support of this proposition that is thoroughly well established, the

court said in Charles v. Daniels, 140 Ky. 379, in consider-
ing how Mary Daniels held the title to infants' land
bought by her at a time when she was acting as adminis-
tratrix of the estate in which the land was sold and as
guardian of the infants that: "Mary Daniels being both
the guardian of her infant children and the administra-
trix of her husband's estate cannot be permitted to buy,
in the settlement suit which she had brought as adminis-
tratrix, her husband's land and hold it in her own right.
It has been often held that a purchase by an administra-
trix or guardian under such circumstances inures for the
benefit of the beneficiaries of the estate, and that the pur-
chaser holds the property as trustee for them." To the
same effect is Conrad v. Conrad, 152 Ky. 422; Clay v.
Thomas, 178 Ky. 199.

It thus appearing that Dorsel held this property as
trustee for the use and benefit of the infant children,
they could not be divested of their title by a sale made
by him, or by a sale made in any other manner than as
pointed out in the provision of the Civil Code, sections
489-498, regulating the sale of real property of persons
under disability. It has been so frequently and consist-
ently held that the real estate of infants, whether the title
be vested in them or held by some one as trustee for their
use and benefit, can not be sold except as provided in
these code provisions, that we need not do more than re-
fer to some of the cases on this subject; Walker v.
Smyser, 80 Ky. 620; Elliott v. Fowler, 112 Ky. 376; Car-
penter v. Moorelock, 151 Ky. 506; Hulsewede v. Church-
man, 111 Ky. 51.

Assuming, then, that the infants were not divested
of their title to this property under the sale made by
Dorsel to Dusing, another question in the case, is the ef-
fect of the county court settlement made by Dorsel in
which he accounted for the proceeds of this property and
the acceptance by the children of their share thereof. In
other words, are the children of Schlickman who were of
age when this settlement was made, and who accepted
their share of the proceeds of this property with which
Dorsel, as administrator, had charged himself, and also
the children who were then infants, but who thereafter,
upon their arrival at age, accepted their share of the
proceeds of this property, estopped to maintain a suit to
recover the property, and if so, when did this estoppel
arise? Did it arise at the time they accepted, after reach-

ing their majority, the proceeds of this sale or was the estoppel postponed and if so to what time? When this county court settlement was made, leaving out of consideration Emma who did not join in this suit, Henry was 26, Leo 24, Clara 21, William 19, Mary 15, Frederick 13, Marguarette 11 and Norbert 10, and when this suit was brought in 1915, Henry was 39, Leo 37, Clara 34, William 32, Mary 28, Frederick 26, Marguarette 24 and Norbert 23. It will thus be seen that Henry, Leo and Clara were of age when the settlement was made, and that Henry reached his majority 18 years before this suit was brought, Leo 16 years, Clara 13, William 11, Mary 7, Frederick 5, Marguarette 3 and Norbert 2.

In respect to the effect of the acceptance by the children after they became of age of their share of the proceeds of this property that was accounted for and charged to Dorsel, as administrator, in his county court settlement, we are of the opinion that this amounted to an election on their part to take their interest in the proceeds in place of their interest in the property; provided that, at the time they accepted their distributable part of this settlement, they knew that the proceeds of this property constituted a part of the proceeds they received, or knew that the administrator had charged himself with the proceeds of this property. If, however, they did not know, at the time they took their distributable share, that a part of it was made up of the proceeds of this property, or if they did not know that the administrator had charged himself with the proceeds, then, and in either of these events, their acceptance of their distributable share, although a part of it may have been the proceeds of this property, did not at the time of their acceptance amount to an election on their part to take the proceeds in place of the property; but, although, their acceptance of their share without knowledge of the fact that a part of it was the proceeds of this property, or without knowledge of the fact that the administrator had charged himself with the proceeds of the property, would not in itself and as of that time amount to such an election as would bind them, it started the statute of limitation in motion, and they would be barred of their right to recover the property within ten years from the date of their acceptance of their distributable share. And the principle we have announced applies to each of the children who accepted,

in whole or in part, their distributable share of the estate after they became 21 years of age.

We do not, however, mean to say that mere constructive knowledge on the part of these children of the facts set out in the *ex parte* county court settlement would be sufficient to charge them, after they became of age, and when they accepted their shares, with notice that the share of the estate they were receiving was composed in part of the proceeds of this property, or that the administrator had charged himself with the proceeds. We think that in a case like this, where there has been a void sale of infants' property, it is essential, in order to charge the infant with ratifying the sale by electing, after he has arrived at age to take the proceeds in place of the property, that he should have actual notice of all the material facts connected with the transaction; and that in the absence of such notice he should have, after accepting his share, ten years in which to make his election in order to be bound by his act in accepting the proceeds.

It has been frequently held by this court that an infant who attempts to convey his land and who has received the proceeds will be barred after the expiration of ten years from his majority of his right to recover the property. A case in point is Hoffert. v. Miller, 82 Ky. 572; in that case it appears from the opinion that infants who had sold and conveyed land and received the purchase price sought to recover it after their majority, and the court, holding that as more than ten years had elapsed between the date of their majority and the bringing of the suit, they were barred by the ten year statute, which was the same as section 2522 of the Kentucky Statutes, reading: "An action for relief not provided for in this or some other chapter, can only be commenced within ten years after the cause of action accrued." And in the course of the opinion said: "The deed of an infant conveying real estate, where any valuable consideration passes to him, is, as well-settled by this court, not absolutely void, but voidable merely. . . . And he has an election, after his disability is ended, to affirm or avoid it. To confirm, it is not indispensable that he should reacknowledge the first or execute a new deed, but he may do so after full age by an act in *pais*. But conveyances of an infant are not so easily ratified as his purchases, and something more than bare recognition or silent acquiescence is necessary to a binding confirmation, un-

less prolonged for the statutory limitation. There must be some positive act, or words of the minor, from which his assent of the deed executed during his minority may be inferred. . . . Within what time such an action must be commenced, and whether there is in fact any express statutory limitation on the subject, are questions not hitherto passed on by this court. The authorities generally agree that the election to avoid such deed must be made by the infant within a reasonable time after he arrives at full age. But what is a reasonable time can not be determined by any certain or fixed test, and must, therefore, be left for the discretionary determination of the court, which is not in accordance with the modern and wiser policy of our statutes, fixing in every case a definite limit to litigation, and a period at which owners of property may repose in security. . . . In our opinion, therefore, while a party may, before the expiration of that period, by act bind himself to a confirmation, he cannot, after ten years from his arrival at full age, maintain an action to avoid and set aside a deed made while an infant. And as this action was not commenced within that statutory limit, the court erred in rendering judgment for the plaintiff, and it is reversed, with directions to dismiss the petition." Other cases to the same effect are: Combs v. Noble, 22 Ky. Law Rep. 736; Slicer v. Holbrook, 29 Ky. Law Rep. 865; Syck v. Hellier, 140 Ky. 388; Henson v. Culp, 157 Ky. 442. Another case presenting facts very similar to this is, Sudduth v. Rowland, 164 Ky. 351. In that case there was a void sale of infant's land, but after the infant became of age he accepted the proceeds and thereafter sought to recover the land, and the court said that the infant had ratified the void sale by the acceptance of the proceeds after his majority, and his long acquiescence in the settlement in which he accepted his share of the proceeds. In that case, the court did not find it necessary to apply the ten year statute, as the infant had waited much longer than ten years before bringing his suit, and his estoppel was put up on the ground of long acquiescence. To the same effect is Williamson v. Mann, 134 Ky. 63

Now, it seems to us that there is no sound reason why the principle of ratification and estoppel should not as effectively apply to cases where the sale of an infant's land is void as to cases in which it is merely voidable. If an infant can, by his conduct, after arriving at age, ratify

and confirm a voidable sale of his land, he should likewise be bound by his ratification of a void sale, because at last the ratification in each case rests upon the ground that it would be inequitable and unjust to permit an infant after arriving at age and with a full knowledge of the transaction to accept the·proceeds of his land·sold during infancy, and then, after the expiration of many years after reaching his majority, to repudiate what he had done with a full understanding of the facts. Supporting this principle is Norris v. Wait, 2 Richardson's Law 148 (S. C.) 44 Am. Dec. 283, where there was a wrongful and void sale of an infant's property, and he sought to recover it after reaching his majority, although he received the benefits of the sale after becoming of age, and the court in denying a recovery said: ."So, too, I have no doubt, if one sell the property of an infant, and after the infant attains to full age, pays him for it, that the infant could not recover it from the purchaser; and that would be on the ground that having accepted the price from him who had wrongfully sold, he thereby consented to waive the illegality of the sale, and make it valid by such an unequivocal act of assent. But before he can be cut off from a clear legal title to property illegally sold, it must be made clearly to appear that he has received, in money or property, an equivalent. The burden of showing this rests on the defendant, and if he fails to establish it clearly, he can not expect to succeed." To the same effect is Barham v. Turbeville,, 1 Swan 437 (Tenn.), 57 Am. Dec. 782. Another case is Penn v. Heisey, 19 Ill. 295, 68 Am. Dec. 597, where the court, in holding that an infant who, after becoming of age, had received the proceeds of a void sale of his land with full knowledge of the facts was thereby .estopped to recover the land, said: "The application of this principle does not depend, as we understand it, upon any supposed distinction between a void and a voidable sale. If the sale be the one or the other, receiving the money, or its proceeds in other valuable property, with a knowledge of the facts, touches the conscience of the party, and therefore establishes the right of the party claiming under such sale, in one case as well as the other. The proof in this case shows that the plaintiffs knew all the facts respecting the sale of the lot by their guardian, and the purchase and conveyance of other lands out of the proceeds. An equitable estoppel prevents a party from using a title

which, in good conscience, ought to inure to the use of another; and if such a case was ever presented, we think this is one. Such estoppels are and should be favored in law, honor, and conscience, for the truest and best of reasons, that a man, having received a benefit in one character, the value of the thing or of the property, shall not afterwards receive the thing or property itself in the same or another character. This principle, so equitable and legal, runs throughout all the transactions and contracts of civilized life.'' To the same effect is Schnell v. City of Chicago, 38 Ill. 382, 87 Am. Dec. 304.

We have therefore no difficulty in setting down that where the land of the infant is sold and conveyed without authority during his infancy, and he accepts the proceeds of the sale after reaching his majority, and after having actual knowledge of the facts, he will, by this act of affirmance be thereafter estopped to recover from the purchaser, the land, and whether he accepted the proceeds with actual knowledge of the facts or not, he will be barred after the expiration of ten years from the acceptance from bringing an action to recover the land. Accordingly, the right of Henry, Leo, Clara and William, all of whom reached their majority more than ten years before the commencement of this action, to maintain this suit is barred by the statute if they accepted any part of their share of the proceeds of the county court settlement, more than ten years before this suit was brought, or at any time before it was brought with actual notice that a part of it was the proceeds of this property, or with actual knowledge that the administrator had charged himself with the proceeds of the property. As to Mary, Frederick, Marguarette and Norbert, ten years had not elapsed between the date of their majority and the bringing of this suit, but, nevertheless, they would be estopped to maintain the action if, after reaching their majority, they received or accepted their share, in whole or in part, of the proceeds of this property with actual knowledge that the share received by them was derived in whole or in part from the sale of this property, or with actual knowledge that the administrator had charged himself with the proceeds of the property.

Another question in the case, is the effect of the suit brought in the Kenton circuit court by the administrator for the purpose of settling his accounts, to which suit all of these children were made parties, and properly

brought before the court. It is the contention of counsel for Dorsel and Dusing that the judgment in this settlement case, which was rendered in 1911, and which stands unreversed and unmodified, is a bar to the prosecution of this action entirely independent of and without regard to the county court settlement or the acceptance of the proceeds of that settlement. Whether it was or not depends on whether the pleadings, exhibits or evidence in this suit fully disclosed the facts connected with the sale of the property in question and that Dorsel had accounted for the proceeds in his settlement. If these facts were fully shown by the record, then all the children who were parties to that suit, and before the court, are bound by the judgment, although some of them, at the time, may have been infants, because a judgment duly and regularly entered is as binding upon infants before the court as it is on adults subject to the remedies allowed infants. Cox v. Interstate Coal Company, 157 Ky. 373; Cole v. Lewis, 159 Ky. 747.

But, unless the facts concerning the sale of this property were so fully manifested by the record as that any person, upon an inspection of it, could have discovered that Dorsel, as administrator with the will annexed, sold this property and in his settlement, as administrator, charged himself with the proceeds, then the judgment in that case is not conclusive upon the children who were at the time infants, and this upon the principle that infants are not bound by the judgment in a case except as to matters that were put in issue, or that appeared in the case.

Another question in the case relates to an issue concerning improvements put on the property by Dusing, the purchaser, but this question of improvements we will not undertake to determine in the present state of the record. On a return of the case the parties may, if they like, reform their pleadings so as to clearly present the question whether Mary, Frederick, Marguarette and Norbert are estopped, upon the principles we have laid down, from maintaining the suit, and the further issue as to improvements.

Wherefore, the judgment is reversed for proceedings not inconsistent with this opinion.