## Keel et al. v. First Nat. Bank of Pikeville et al.

(Decided Jan. 14, 1938.)

STEELE & VANOVER for appellants.

O. T. HINTON for appellee First Nat. Bank.

WILLIS STATON for appellee Lou Pinson.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Reversing.

The question presented concerns the power of an administrator de bonis non, with the will annexed, as successor of an executor and trustee nominated in the will of Mrs. Etta R. Keel, deceased, to dispose of real estate devised by her will. Such parts thereof as are pertinent to the question presented, are:

"3. I will and bequeath to Fonso Wright my hereinafter named executor the Residue of my estate both Real and personal to be held by him in trust for the purposes hereafter set out viz—

"(a) I desire that Roy Keel be furnished with money, clothing, home and medical attention and be provided for in a comfortable manner so long as he lives & my executor will use his own discretion in the amount so used for this purpose.

"(b) After the death of the said Roy Keel I desire that the proceeds of my estate remaining after providing for Roy Keel as aforesaid including his burial expenses be used by my executor & held by him as a trust fund for the support of Watta Lee Keel & Norma Keel children of Roy Keel & Bernice Medlock & Luella Medlock children of Annie Wiseman, * * * and the executor will hold said estate in trust & so administer it until the youngest of the said four children arrives at the age of 21 years at which date said trust will terminate."

"4. I hereby appoint Fonso Wright of Pikeville, Ky., my executor to carry out the provision of this will & request the court to appoint him as my executor to Administer my estate & I hereby authorize and empower him to sell any real estate he may deem necessary in order to procure sufficient money to enable him to provide for my beneficiary above named or if in his judgment it is to the best interest of the estate to sell any or all real estate he is empowered so to do."

Fonso Wright duly qualified and acted as executor for a number of years, apparently until after the death of Roy Keel. Upon his resignation the First National Bank of Pikeville qualified as executor with the will annexed.

On June 17, 1935, the substituted representative sold a house and lot in Pikeville, a part of the estate left by Mrs. Keel, to Mrs. Pinson for 7,000, of which sum one-third was paid in cash, and two notes executed in equal amounts for the remainder, due respectively in six and twelve months; a lien, of course, being retained to secure their payment. The first note stood

unpaid on February 7, 1936, and the representative filed suit, praying judgment for the amount, and for sale of the property to satisfy the debt. Mrs. Pinson demurred to the petition.

The appellants, two infant children of Roy Keel, deceased, by their mother as next friend, filed an intervening petition, directly attacking the power of the representative to dispose of the real estate, on the ground that the powers vested in Fonso Wright as executor and trustee, being of a personal nature, did not pass to the administrative successor, and on their pleading they asked that the deed to Mrs. Pinson be canceled.

Mrs. Pinson answered the bank's petition, admitting the purchase and asserting her readiness and ability to meet the deferred payments, provided the court declare her title sound, saying that she made the purchase in the best of faith on the belief that the representative had power under the will to pass a good title. Since her purchase of the property she says she has enhanced its value to the extent of more than $2,000 by placing thereon necessary, lasting, and valuable improvements, and asks that her rights in respect thereof be protected, in case it should be determined and held that her title is faulty. She also responded to the intervening petition of the next friend, in which she challenged the right of the next friend to maintain the defense set up in behalf of the infants, and also suggested a lack of proper parties. We need not note these objections, since the interest of the Medlock children under the will seems to be identical with, and not inimical to the interest of, the Keel children. She then pleads, in proper terms, the power of the successor personal representative to convey under the terms of Mrs. Keel's will, and the bona fides of the representative in making the sale to her, denying the allegations of the intervening petition. She also pleads in bar, as does the bank, the decision of the lower court, upheld by this court in Casebolt v. Keel's Adm'r, 241 Ky. 157, 43 S. W. (2d) 523, wherein the will presented there was construed relative to the power of the original representative to sell property of decedent. This may as well be disposed of at this point. In that case it appeared that the first-named executor, Wright, had

conveyed certain real estate to Casebolt, who had failed to meet a deferred payment. Suit was brought to enforce collection, and the debtor raised the question of the quality of his title, because of the lack of authority in the original executor to convey good title. We held in that case that Mrs. Keel's will conferred on the executor not only the express power to sell such of the real estate as he deemed necessary to procure sufficient money to enable him to provide for the beneficiaries named in the will, but also to sell any real estate, "if in his judgment it is to the best interest of the estate," because "in the first place he is made the judge of the necessity, while in the second power he is made the judge of whether a sale is to the best interest of the estate. In the circumstances it is immaterial under which power the sale in question was made." The distinction between that case and the one at bar is obvious, since there the sale was made by the original trustee and executor.

Going back to the procedure, we find that the personal representative, the bank, filed response to the intervening petition of the Keel children, in which it denied in the main its allegations, and plead affirmatively its alleged power and source of power. The representative files as part of its petition a copy of its several reports of its administration of the trust fund, beginning in July, 1929, up to June, 1935. In that report it is shown that it had in its hands for distribution $5,339.60, of which 60 per cent. was to go under the will to the Medlock, and 40 per cent. to the Keel children. It was shown that one set of children were in greater need than the other; one had received from the estate, in addition to the use of the house, much more of the estate than the others, and it was the purpose in selling the property to obtain money to equalize the distribution.

It is also pleaded that a sale of this property was necessary because Union College had obtained a judgment against the estate, and its attorneys were threatening to levy an execution, and that a sale under execution would have entailed a sacrificial sale of the property. The representative says that in the exercise of its best judgment and under the power it believed it had, it sold the property in question, which it ap-

pears was sold at public sale, but not under orders of court. It is said the guardian of the Medlock children agreed, but the mother of the Keel children objected to the sale. The representative also pleads the terms of section 3892 Kentucky Statutes, claiming that said section conclusively gives it the same power of sale as held by the original representative.

We have sufficiently detailed the pleadings up to this point, which correctly raised the issue. Upon submission to the court upon demurrers, the court sustained the demurrers of the representative and the purchaser to the intervening petition of the infants; overruled the demurrers of the intervening petitioners to the cross-petition of the purchaser, and the response to the answer of the personal representatives. The intervening petitioners refusing to plead further, the court held that the representative had the authority to and did pass title to the purchaser, and ordered sale thereof to satisfy the debt of the purchaser, retaining the case on the docket for further proceedings with regard to the last purchase-money note. From this judgment the intervening petitioners were granted appeal.

The only question to be determined is whether or not the successor to the nominated executor and trustee is vested, by the terms of the will and the statute quoted, and under the facts as plead, with the power of disposing of real estate, without first applying to the courts for an order of sale. It is the contention of appellant that the powers conferred upon Fonso Wright were of a personal nature; that since he was charged with the exercise of "discretion" and "best judgment," the trust involved was personal, and hence, even under the statute, all the powers vested in him by the will do not pass to his successor, named by the court. On the other hand the appellees rely on the section of the statute above quoted, as applicable to the facts here shown, and contend that the present personal representative was invested with the claimed powers. In support of its argument many cases are cited which are said to uphold appellee's contention, but when analyzed, a distinction between them and cases relied on by appellant and this case is perceivable. The will here dif-

fers in one respect from those which we have observed in the cases cited by appellee.

The chief purpose in the mind of testatrix, as evidenced by her will, was that Roy be supplied with money, clothing, home, and medical aid. He was, as testatrix said, "To be provided for in a comfortable manner as long as he lives," and the executor was to exercise his own discretion in the amount used for that purpose. Her secondary thought, as evidenced by the will, was that the remainder of the estate was to be held in trust for the support and education of the Keel and Medlock children,

> "And the said executor will hold said estate in trust and so administer it until the youngest of the said four children arrive at the age of 21 years, at which date said trust will terminate."

As is observed from the record, several years will have to pass before termination of the trust.

It appears from the record that Roy is dead, how long is not shown, but we can assume from the pleadings it was long before the sale of the land in question, or before the claimed reasons for the instant sale existed. Therefore, it is clear from the facts, in light of the will, that no power existed (nor is any claimed) in the present personal representative to sell for the purpose of providing for the named beneficiary. It therefore follows that if there be power, it is to sell any or all real estate if in "his judgment it is to the best interest to the estate." In this connection the only "best interest" of the estate, as is apparent from the pleading of the representative, is the matter of equalization as between the two sets of children, and the payment of a judgment (the character of which is not clearly shown) to prevent an execution and consequent proceedings.

As a general rule a power of selling real estate conferred by will upon a named executor is one of personal confidence, which cannot be exercised by an administrator with the will annexed. It is otherwise where the will clearly evinces an intention to confer the power to convey upon the executor by virtue of his office. An exception to the rule is where the like power is given to the successor by statute, and appellant relies upon

our statute, supra, to except the transaction here from the application of the general rule. That the statute is also subject to some exception is fully recognized by this court. In the case of Miller v. Miller's Guardian, 236 Ky. 45, 32 S. W. (2d) 539, 540, wherein it appeared that the will required the sale of the property on terms fixed by the will, a sale was made by the administrator with the will annexed. We pointed to section 3892 Kentucky Statutes, and upheld the sale and cited cases supporting the principle announced, but said:

"In some instances the power bestowed upon a nominated executor is deemed limited to him because of special confidence reposed in the chosen fiduciary (Schlickman v. Citizens' National Bank, 139 Ky. 268, 129 S. W. 823, 29 L. R. A., N. S., 264)."

An examination of the will in question, wherein the testatrix devised her whole property in trust to Wright, with power to sell for certain purposes, "if necessary, or if in his judgment it was to the best interest of the estate," when viewed with other portions of the will, lead us to the conclusion that the power here vested was and is of that personal character rested on the confidence testatrix had in her selected executor and trustee, thus bringing it within the class adverted to in the Miller Case, supra, and others to be cited.

The statute, supra, relied on is not new. The identical language appears in an Act of 1810. Session Acts, 1810-11, p. 205; Littell's Digest Kentucky Laws, 1822, p. 547. In Jackson v. Jeffries, 1 A. K. Marsh. 88, the court held that an administrator with the will annexed, under the act referred to, had power to sell lands which his predecessor had been empowered to sell, but whether the power amounted to a direction to sell or the power was to be exercised in discretion does not appear. In Brown v. Hobson, 3 A. K. Marsh. 380, 13 Am. Dec. 187, it was held that a discretionary power to sell in a way "best calculated * * * to benefit my family," in the opinion and judgment of nominated representatives, could not be exercised by the administrator with the will annexed. In this case neither the statute nor the Jackson Case, supra, was mentioned. In Shields v. Smith, 8 Bush 601, 604, it was held that an administrator with the will annexed could lawfully sell land which

the executors had a power to sell, as was so in Gulley v. Prather's Adm'r, 7 Bush 167, 168. The above cases are cited in Warfield v. Brand's Adm'r, 13 Bush 77, in which, after reviewing them, we said:

"But in all those cases, except the first two, the sale of the land was necessary for the settlement and distribution of the respective estates, * * * such duties [due to certain statutes pointed out] are now to be regarded as executorial, and therefore proper to be exercised by administrators with the will annexed. * * * The statute was, no doubt, enacted solely to facilitate the settlement of estates, and we are unwilling to believe that the legislature intended to go beyond what was necessary for that purpose, and to confide to administrators de bonis non those delicate and responsible trusts which testators sometimes confide to their chosen executors. * * * Yet if the construction contended for by the appellee be adopted, the legislature has, by a dogmatic statute, conferred power for that purpose upon an administrator with the will annexed."

In this same case the court pointed out the distinction in the offices of executor and trustee saying:

"Their characters are frequently, as they are in this will, united in the same person, but they are themselves distinct, and the executorial character, which begins at the death of the testator, may merge into the character of trustee, which begins at a later period, and for the most part when the executorial duties relative to the trust fund have ceased. * * * For the most part, executorial duties consist in ascertaining the proper net amount of the various parts of the testator's property after payment of debts and expenses, and distributing them among the persons entitled; these persons may be trustees, who hold it in trust for others, and they themselves may be and often are the trustees, who receive and retain, as trustees, the fund ascertained by themselves as executors."

The above case is referred to in Schlickman v. Citizens' National Bank, supra, which cites some cases decided by this court in the interim. In the Schlickman

Case it is true, as argued by appellee, there was a direction in the will relating to the management of a business by the nominated executor, which it is argued differentiated it from other cases construing the section of the statute, supra, to endow the succeeding representative with full power. Nevertheless, the court's conclusion in that case was based on the line of cases we have quoted, many, if not all of which, are minus the private business operating feature. After quoting from the Warfield Case, supra (and it is applicable here) we said:

"And in the case of Major v. Herndon, 78 Ky. 123, where, in the will under consideration, the testator's wife was named as executrix, with directions that she should carry out the provisions of the will, the court held that, although named as executrix, she was in fact holding the estate which she had administered as trustee, and not as executrix.

"Reading the statute under consideration in the light of the construction placed upon it in the foregoing opinions, it is clear that the trouble with counsel for appellant lies in its application. In none of the cases where the application of this statute has been involved has the court held that any duty which rightfully devolved upon the executor as such might not be discharged by the administrator with the will annexed. But it has been distinctly held that many of the duties imposed upon executors are not executorial in their nature, but personal to the executor, and it is this latter class of powers and duties which do not pass to the administrator with the will annexed and are not covered by the statute. For the statute only provides that the administrator with the will annexed shall exercise all power and authority, and possess the same rights and interest, and be responsible as the executors named therein, and this court has construed this to mean such power as the executor named in the will has by virtue of his office as executor, but does not pass to the administrator with the will annexed such powers as the person named as executor may have under and by virtue of any trust reposed in him by the will

which did not look primarily to the settlement of the estate. And this is true, even though in directing him to execute such trust he is designated in the will as executor, the court being guided in reaching its conclusion rather by the object sought to be obtained by the power than by the name used to designate the one directed to execute it.''

The same case came back to this court for a consideration of the Schlickman will, and the application of section 3892, Kentucky Statutes. See Schlickman v. Dusing, 180 Ky. 506, 203 S. W. 295, 297. There are some features in the last-named case, not common to the first, or to others cited by us, as, for instance, the property was sold under decretal sale, ''which took the estate from under the will, and thereafter it could not be subject to its provisions.'' The sale of the property was upheld, chiefly on the grounds that devisee had accepted the proceeds of the sale, and some had failed to attack same within the statutory period. However, the court in the last-named case found no fault with the reasoning applied and conclusions reached on the prior appeal. The court referred to Schlickman v. Citizens' Nat. Bank, supra, and said:

''In the opinion in that case, and the authorities therein referred to, there will be found a statement distinguishing the power that an administrator with the will annexed may exercise from those that he may not exercise. * * * It thus appearing that Dorsel held this property as trustee for the use and benefit of the infant children, they could not be divested of their title by a sale made by him, nor by a sale made in any other manner than as pointed out in the provisions of the Civil Code, secs. 489-498, regulating the sale of real property of persons under disability. It has been so frequently and consistently held that the real estate of infants, whether the title be vested in them, or held by some one as trustee for their use and benefit, cannot be sold except as provided in these Code provisions, that we need not do more than refer to some of the cases on this subject.'' (Citing cases.)

It will be noted that Dorsel was the administrator

with the will annexed, succeeding the original executor who had power to

"do any and all things concerning my estate that I could do if living * * * and convey any or all of my real estate when in his judgment it may be desirable to do so."

We have reviewed the cases, or most of them, cited by appellants, and find that they may be distinguished, particularly when looking to the will under consideration. Haggin v. Straus, 148 Ky. 140, 146 S. W. 391, 50 L. R. A., N. S., 642, was written by the same member of this court who had theretofore written the opinion in the first Schlickman Case. There a succeeding trustee had sold real estate left by testator, under a decree of court; the sale being reported, but not confirmed. Looking to the power vested by the will, the court held that the trustee had the power under the will to make the sale. The original suit there appears to have been one to settle the estate, which is not true in this case. The sale was made for distribution of the estate, in a manner provided in the will. In Jarboe v. Griffith, 150 Ky. 549, 150 S. W. 839, 840, wherein the named executor failed to qualify, and others did so, the successors brought a suit for a division of real estate left by testator, and the land was divided; one portion falling to Clint Griffith, beneficiary of a trust created. The administrators with the will annexed, after the division, conveyed the property to Griffith's trustee; he later conveyed to the beneficiary, who later conveyed to a stranger, who questioned title. The court, seemingly, upheld appellants' construction of the statute in question, but added:

"In addition to this, J. T. Griffith held the one-seventh interest set apart to Clinton Griffith as trustee for Clinton Griffith. While he is called executor in the will, in holding this one-seventh he was discharging a trust imposed upon him as trustee which was outside of and beyond the duties imposed by law upon an executor."

In Hanna v. Prewitt, 153 Ky. 310, 311, 155 S. W. 726, the court held, construing section 3892, that the administrator with the will annexed had the same powers as vested in the named executor. A reading of the

will, or so much as was thought to be pertinent to a decision of the question before this court, discloses quite a different apparent intention on the part of the testatrix, and clearly shows that the will did not contain any trust features. In Varble v. Collins' Ex'r, 168 Ky. 247, 181 S. W. 1115, Ann. Cas. 1916D, 448, the same is true, and the sale of real estate was by one of the nominated executors. This case only discusses the "implied power" where the will is silent as to power to sell, and did not call for a construction of the statute we have under consideration. In Leonard v. Hale's Adm'r, 144 Ky. 77, 137 S. W. 866, 867, the executor was directed to sell all real estate; "to * * * make deeds * * * and divide the proceeds of the sale as directed in my will."

We think the distinction in the provisions of the two classes of wills considered in the cases cited is clear, and that those relied upon by appellants are sound in principle, and not to be departed from. They are controlling in the instant case, and we conclude that, under the terms of the will, and the facts developed on the pleadings, the substituted personal representative was without power to convey a good title to the property in question.

The judgment is reversed, and cause remanded for proceedings consistent with this opinion.